JOHN OLAGUES
413 SAUVE ROAD
RIVER RIDGE
LOUISIANA 70123
PHONE/ FAX 504-738-5914

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 DEC -4  PM 3: 39

LORETTA G. WHYTE
        CLERK

UNITED STATES DISTRICT COURT

FOR THE

EASTERN DISTRICT OF LOUISIANA

03-3428

SECT. K MAG. 1

John A. Olagues, Caroline Olagues and    minor children
Christine Olagues by and through
their guardian John Olagues

    Plaintiffs,

    v.

Patricia Stafford in her official and individual capacities,
Leon Kousharian in his official and individual capacities,
Otis Bruce in his official and individual capacities,
Christopher Pool in his official and individual capacities,
The State of California,
The County of Marin in California,
The City of Belvedere, California
Charlotte Jensen in her individual capacity.
Peggy Bennington in her individual capacity and as a representative of
Charlotte Jensen,
ADA David Wolf in his official and individual capacities,
The State of Louisiana, The Parish of Jefferson
and Does 1-20

    Defendants

Fee $150.00
Process
X Dktd
CtRmDep
Doc. No.

---

Complaint for Damages for Constitutional and Civil Rights Violations,
For Injunctive Relief and Declaratory Judgement.

---

Jurisdiction

This court has jurisdiction since these causes of action arise under the Fourth, Fifth and the Fourteenth Amendments to the US Constitution, Title 42 Section 1983 of the US Code and 28 USC section 1331 and 28 USC section 1367.

PREFACE

This suit is about the pre-meditated illegal seizure and abduction of John Olagues daughters, Caroline and Christine Olagues without notice, hearing or any "due process of law" for the purpose of supporting the private interest of Charlotte Jensen, John Olagues's estranged wife.

BACKGROUND

John Olagues was born in New Orleans and lived there for 31 years having graduated from Jesuit High School and Tulane University. He is presently a citizen and resident of Louisiana and of the United States having resided in River Ridge, Louisiana since June 2001.

Caroline Olagues (9 years 11 months) and Christine Olagues (8 years and 6 months) are the daughters of John Olagues and Charlotte Jensen and are Citizens of the United States of America. They are permanent residents with

their mother, Jensen, in New Zealand. Jensen is a citizen of Denmark not a citizen of the USA.

On September 11, 12, 2002 a hearing was held in a New Zealand Family Court to decide a petition under the Hague Convention on the Civil Aspects of International Child Abduction. The New Zealand Central Authority for the Hague convention had filed that petition on behalf of John Olagues to facilitate access to his daughters. Jensen was denying Olagues access and custody to the children that was ordered by a New Zealand Family Court.

John Olagues on September 12, 2002 and on July 23, 2003 had joint custody with Charlotte Jensen of his daughters Caroline and Christine Olagues pursuant to a New Zealand court order of January 17, 2001(see attached custody order Exhibit 1). This order had never been cancelled or modified. Olagues's physical custody rights were that he is have the children a) three week ends out of four and b) 50 % of the children's school holidays and c) for one Tuesday evening per month. The definition of the custody and access rights are referred to in the Hague Convention Article 5.

On December 21, 2000, a ne exeat order was made prohibiting Jensen or Olagues from removing the children from New Zealand without mutual agreement or order of the court. This order was still in effect on July 23, 2003 but had been varied by the September 30, 2002 Hague Convention access order.

The Hague Convention petition was not a request to modify, vary or cancel the January 17, 2001 order. Petitions under the Hague Convention whether for access or return of the children can not go to the merits of the underlying custody arrangements. See. Mozes v. Mozes, 239 F.3d 1067; and Shalit v. Coppe 182 F. 3d 1124, and Gaudin v. Remis 282 F. 3d 1178 (March 2002) " the (Hague) Convention does not extend to custody determinations, i.e. which parent should care for the child." and Gonzalez v. Guiterrez 9 th Circuit Court of Appeals( Nov. 2002) 311 F 3d. 948, 954 " a judicial proceeding under the Hague Convention is not meant, however, to inquire into the merits of a custody dispute underlying the petition for return."

The Uniform Child Custody Jurisdiction and Enforcement Act (1997) which California has codified into their Family Code sections 3400 et seq. states in it's "COMMENTS" on the definition of a "child custody proceeding" that CASES INVOLVING THE HAGUE CONVENTION ON THE CIVIL

ASPECTS OF INTERRNATIONAL CHILD ABDUCTION HAVE NOT BEEN INCLUDED AT THIS POINT, BECAUSE CUSTODY OF THE CHILD IS NOT DETERMINED IN A PROCEEDING UNDER THE INTERNATIONAL CHILD ABDUCTIONS REMEDIES ACT.

The New Zealand petition arose under Article 21 of the Hague Convention and it sought only to insure that petitioner's rights of access are effectively respected, which were being denied to him by his estranged wife, Jensen.

A decision and order was granted pursuant to the Hague Convention petition. A copy of that decision and order is attached and made part of this complaint by reference (See Exhibit 2). That decision and order assures Olagues the exercise of certain rights of access in the USA and New Zealand. The September 30, 2002 order varies the ne exeat order of December 20, 2000. One condition of the September 30, 2002 order is that the order is be "registered" in California.

However, the courts of California allow only registration of "custody determination orders" and not Hague Convention Access orders and not "ne exeat" orders or variances of "ne exeat" orders. The Hague access order could not legally be registered in California. An attempt to register the access order was made on June 13, 2003, however.

On June 21-22, 2003, our daughters were flown from New Zealand to California chaperoned by their mother and handed over to their father, John Olagues, on July 2, 2003 in Marin County. During the period June 21- July 2, 2003, the children, according to the only custody determination ever issued, were to be in the joint legal and physical custody of Olagues and Jensen.

Olagues left Marin County with the children on July 5, 2003.

From July 10 – 23, 2003 Olagues and his daughters were in Louisiana. Their mother, Jensen, knew their whereabouts and spoke with them daily by telephone. She could have visited the girls pursuant to her custody rights under the January 17, 2001 order in Louisiana if she chose to. The children were never concealed or detained.

On July 21, 2003, Charlotte Jensen in California recorded a confidential conversation between herself and John Olagues at the suggestion of Marin

Investigator Patty Stafford in violation of California Penal Code section 632. Stafford subsequently used the contents of that recording in a 'declaration" (see exhibit 3) in violation of Penal Code section 632 d).

On July 23, the daughters were seized at 413 Sauve Rd. in River Ridge Louisiana by armed officers of the Jefferson Parish Sheriff's department, the Belvedere, California police department and the Marin County District's office and flown to California that night.

There was no pre-seizure hearing or notice of hearing served on Olagues or the children in either California or Louisiana.

Pursuant to ex-parte orders issued in California and in Louisiana, the children were put in the temporary custody of a Belvedere police officer, Sgt. Christopher Pool, and Marin investigator, Patricia Stafford, for purposes of seizing and transporting them to California. (see attached orders from Marin County and Jefferson Parish Exhibit 4).

There was no post - seizure hearing in either California or Louisiana except for the "ex parte hearing" of July 31, 2003 in California where Judge Vernon Smith set aside the earlier order giving temporary custody of the children to the Marin District attorney. He ruled that it was undecided whether Olagues or Jensen had custody of the children and he would not decide that issue.

John Olagues had been arrested by Jefferson parish police on July 23, 2003 approximately one hour prior to the seizure of the children and incarcerated in the Gretna, Louisiana, jail. He was denied bail for almost 6 days. A complaint had been filed and an arrest warrant had been issued alleging that Olagues in Marin County on or around July 18, 2003 violated a custody decree in violation of California Penal Code 278.5 a). He was held in the Gretna jail pending extradition to California. Olagues was released on bail July 29, 2003.

An extradition hearing was scheduled for August 20, 2003. The August 20, 2003 hearing was continued until October 15, 2003 since on August 20, 2003 California had not prepared proper extradition documents or received approval from the Louisiana governor to extradite. Olagues was again arrested on or around September 15, 2003 while out on bail and jailed for three days in the Gretna jail on the same exact allegations as previously.

On October 15, 2003, the extradition attempt was withdrawn for the state's second failure to be ready for the extradition hearing (See attached order of Judge Windhorst of October 15, 2003 Exhibit 5). California Deputy District attorneys have now realized that they have no jurisdiction over Olagues and have no custody order that he allegedly violated. That is why the request to extradite has been withdrawn.

However, they refuse to dismiss the California complaint and arrest warrant. They refuse to instruct the Governor of California or Louisiana to withdraw the request for extradition or the Louisiana Governor's warrant even in the face of Judge Windhorst's order of October 15, 2003. These refusals are to promote the private interests of Charlotte Jensen and in furtherance of their attempt to deny Olagues his rights of custody and due process of law.

DEFENDANTS

Patricia Stafford is an investigator for the Marin county district attorney's office in San Rafael California. She is being sued for actual and punitive damages for Constitutional and civil rights violations under color of law and is sued to enjoin her from violations of California law Penal Code 632 and 632 d) and from continuing Constitutional and civil rights violations under color of law against plaintiffs. At this time, Olagues is unaware of whether the actions of Stafford were taken at her own discretion or were a matter of policy for persons in her position.

Leon Kousharian is a deputy district attorney for Marin County in San Rafael, California. He is being sued for actual and punitive damages for Constitutional and civil rights violations under color of law against plaintiffs. He is being sued to enjoin him under section 637.2 of the California Penal Code from violations of California law Penal Code 632 and 632 d) and continuing Constitutional and rights violations under color of law against plaintiffs. He is also being sued for a declaratory judgement of whether the variation of a "ne exeat" order pursuant to a Hague Convention petition issued in Jensen v. Olagues September 30, 2002 can be a "custody determination order". This issue has somewhat been decided by the United States Court of Appeals for the Ninth Circuit in Edurdo Arce Gonzales v. Rosa Gutierrez (2002) 311. F3d. 948, 954. At this time, Olagues is unaware of whether the actions of Kousharian were taken at his own discretion or were a matter of policy for persons in his position.

Otis Bruce is a Deputy District Attorney in Marin County, California who under color of law participated in the issuance of the Amended Complaint of August 7, 2003 and the application for requisition for Olagues's extradition to California. He is being sued for actual and punitive damages for constitutional and civil rights violations under color of law and sued to enjoin him for violations of Section 632 and 632 d) of the California Penal Code. At this time, Olagues is unaware whether the actions of Bruce were taken at his own discretion or were a matter of policy for persons in his position.

Christopher Pool is a police officer in Belvedere, California, who flew to Louisiana to participate in the illegal seizure of our daughters. He is being sued for actual and punitive damages for Constitutional and civil rights violations under color of law to plaintiffs. At this time, Olagues is unaware whether the actions of Pool were taken at his own discretion or were a matter of policy for persons in his position. He is being sued to enjoin him from the use of illegally recorded conversations made on July 21, 2002 in violation of 632 and 632 d) of the California Penal Code.

Patricia Bennington is an attorney in Marin County, California who represented Charlotte Jensen. She is being sued for actual and punitive damages for Constitutional and civil rights violations to plaintiffs. Pennington is a private citizen who acted in sufficient connection to the above persons acting under color of law. Pennington participated in the illegal transfer of Caroline and Christine Olagues from John Olagues's custody to Charlotte's custody and the removal of the children to New Zealand. She knowingly filed false information in an ex-parte proceeding in California and supported the filing with supporting documents that she knew or should have known were false. She is also being sued to enjoin her from further violations of Section 632 and 632 d) of the California Penal Code.

Charlotte Jensen is the estranged wife of John Olagues, who is being sued for actual and punitive damages for the Constitutional and civil rights violations to plaintiffs in sufficient connections to officials of Marin County named above acting under color of law. She is being sued to enjoin her from violations of California Penal Code section 632 and 632 d) as she has used the illegally recorded confidentially conversations in civil and criminal proceedings both in California and New Zealand. Jensen has made a series

of false claims and statements to the Marin Deputy District Attorney and investigators and filed false affidavits.

David Wolff is an assistant district attorney for the Jefferson Parish District attorneys office in Gretna Louisiana. He is being sued for violations of the Constitutional and civil rights of plaintiffs under color of law and for declaratory judgement on the issue of the access order and its impact. In addition, he is being sued to enjoin him from further violations of Section 632 and 632 d) of the California Penal Code. At this time, Olagues is unaware of whether the actions of David Wolff were at his own discretion or were a matter of policy for persons in his position.

The State of California, the County of Marin and the City of Belvedere California are being sued for actual and punitive damages for failure to train and supervise their agents properly and either through negligence or as a matter of policy are allowing their agents to violate the Constitutional and civil rights of plaintiffs and others similarly situated. These States and Municipalities are sued to enjoin them from using information derived in violation of California Penal Code section 632 and 632 d).

All defendants were aware of clearly established principles that before removal of a child from a parent's custody, due process of law is required. They knew that due process required notice and a meaningful hearing in California and Louisiana but chose not to afford due process to Olagues because to do so may delay the seizure and transportation of the children to California and New Zealand. They took the law in their own hands and knowingly violated Olagues rights to due process and the UCCJEA. "There is no qualified immunity for removing children from parent's custody without notice or hearing" Ram v. Rubin (1997) (9th Circuit Court of Appeals)

All defendants and their agents were aware of the violation of Penal Code sections 632 and 632 d) and have violated the section. All defendants are aware of the order of Judge Windhorst but refuse to comply with the order.

CAUSES OF ACTION

The FIRST CAUSE OF ACTION is a cause for damages due to deprivation of plaintiff Olagues's Constitutional rights, privileges, and immunities under color of law. This cause arises under 42 USC section 1983, the 4th, 5th and 14th Amendments to the US Constitution. The right that was violated was John Olagues's right to "the companionship, care, custody, and management of his or her children" which "undeniably warrants defenses and absent a powerful countervailing interest, protection" Stanley v. Illinois 405 US 645, 651.

This right was taken from Olagues without affording Olagues the right to "due process of law". Guaranteed to him under the US Constitution and the 14th Amendment.

Marin Deputy District Attorney Leon Kousharian, in an effort to promote the private interest of Charlotte Jensen either from ignorance of the law or willful defiance of clear statues of the California Family Code and the rights of Olagues to "due process of law" decided to do the following:

   He erroneously filed an Application (attached Exhibit 4) under Section 1331, 1333 of the Family Code for an ex parte Temporary Custody order. A temporary custody order under section 1331 or 1333 would normally only follow an custody or visitation order issued and entered by a California court after a custody hearing or enforcement hearing. There was no order or custody hearing or enforcement hearing. The fraudulent "declaration" of Patricia Stafford was used to support the Application. The fraudulent "declaration" is totally on information and belief and not under penalty of perjury as is required by Section 1333. Part of the "declaration" was a result of a taped recording in violation of Penal Code section 632. It's use is a violation of section 632 d)

Both Kousharian and Stafford are in violation of California Penal Code section 632 d) by the use of illegally obtained recordings of Olagues's confidential conversations with Jensen.

 The Stafford "declaration" claims Jensen feared that the children were abducted. This is false and both Jensen and Stafford know it is false.

Stafford claimed the Access order prohibited the children from leaving California. This is false.

Stafford deliberately mis- characterized the Barbara Greig fax and her statements in a phone call.

Stafford in her "declaration" of July 21, 2003 refers to the Access order as a custody decree, when she should have known otherwise. She continues to promote this idea on August 7, 2003 even after she was told on July 30, 2003 that her 'declaration" was false and that both parties had joint custody.

Stafford encouraged Jensen to violate a Penal Code section 632 by recording a confidential conversation with Olagues without Olagues's knowledge.

Stafford claims Jensen told her that Jensen had sole physical custody of the children since November 23, 2000. That statement is obviously false but was used by Stafford in her "declaration" regardless.

The information gathered in the illegally recorded call was used by Kousharian and Stafford to prosecute Olagues with a crime under Section 278.5 a).

Kousharian decided that no notice was to been given to Olagues prior to the removal of the children. Therefore, Olagues could not refute the fraudulent affidavit, could not show that the September 30, 2002 order was not a "child custody determination", and could not illustrate that he had joint custody of the children at the time of the seizure which is clearly illustrated in the September 30, 2002 order.

There was no notice served on Olagues and no hearing and no petition filed in California or Louisiana prior to the seizure of his children. The attached Application specifically requests that no pre-seizure notice or hearing be given to Olagues and that Olagues be arrested prior to the children being removed from Louisiana. (See paragraph 9 of the application Exhibit 4). There was no basis to deny Olagues notice and a hearing other to promote the interest of Jensen.

Kousharian then persuaded Jefferson Parish ADA David Wolff to assist him in his efforts to promote the private interest of Jensen by having David

Wolff file a motion for an ex parte order for temporary custody for transportation, which was granted without notice to Olagues or hearing (See attached motion and order Exhibit 4).

ADA David Wolff did not investigate the law or the facts but assumed all of what Kousharian, Patricia Stafford and Christopher Pool told him was true.

In addition he added some false statements and attached the fraudulent "declaration" of Stafford containing information from the July 21, 2003 illegal recording.

There were no exigent circumstances and no abuse or danger or claim of abuse or danger to the children. There was no claim of possible flight threat.

The only colorful claim of a hearing was an ex parte session in Marin County Superior Court post-seizure before Judge Vernon Smith on July 31, 2003.

There, Olagues was allowed to appear by phone. He appeared solely to challenge the jurisdiction of the court, thirty hours after he was let out of jail in Louisiana. The hearing session was to decide whether the temporary custody order issued ex-parte in California would be set aside. Judge Smith decided that it should be set aside and the children returned to whom ever has custody. It was intended by Judge Adams, who originally issued the temporary order, that the children would be brought to California "pending further hearings". It was intended that there would be a post-seizure hearing but Kousharian, Pennington and Jensen conspired to deny Olagues that hearing and to defy the spirit of the order. They denied the request by Olagues to have the ordered "pending further hearing". (see Temporary Restraining Orders of July 21, 2003 signed by Judge Adams page three)

The custody of Olagues's daughters was then transferred to Charlotte Jensen's care by the district attorney, even though Judge Smith ruled that he would not decide which parent had custody.

The Marin District Attorney together with Jensen's attorney, Peggy Bennington decided that Jensen had custody and they refused a request of Olagues for a hearing to decide the custody issue. They instructed Jensen to take the children to New Zealand without ever providing any hearing to Olagues. They did this in disregard for clear existing law and in fact they

knew or should have known that they were violating the Uniform Child Custody Jurisdiction and Enforcement Act, which requires notice, a petition and a hearing.

Charlotte Jensen deliberately mislead Leon Kousharian investigator Patricia Stafford and Belvedere Police Sergeant Christopher Pool by stating that the September 30, 2003 order was the "current custody order" whereby Olagues had only visitation rights as outline in paragraph 45 of the order. Jensen knew this statement was false.

Jensen made these fraudulent claims in order to deny Olagues his court ordered custody and access rights and to lead unsophisticated law enforcement personel to abuse the criminal process for her private purposes.

" An elementary and fundamental requirement of due process in any proceeding which is to accorded finality is notice and opportunity for hearing appropriate to the nature of the case." Milliken v. Meyer 311 US 457.

"A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 US 545 (1965)

"Indisputably, the seizure of (the child) Brittany constitutes an interference with (the mother) Batten's liberty interest and thus triggers the procedural protection of the Due Process Clause of the Fourteenth Amendment. Batten v. Gomez. Fourth Circuit US. Court of Appeals; and Lassiter v. Department of Soc. Services 452 US. 18, 27."

"Finally, due process requires pre-enforcement notice and some opportunity to object before law enforcement officials may separate a parent from her child pursuant to an out- of - the state order." Morrell v. Mock 270 F.3d 1090, 1097- 1100.

Patricia Stafford, Leon Kousharian, Christopher Pool, David Wolff, and Charlotte Jensen, Jensen's lawyer Peggy Bennington and others participated in the denial of due process under the color of law for the purpose of promoting a denial of Olagues's custody rights.

Patricia Stafford filled out a document she called a "declaration". That same fraudulent document was considered an "affidavit" in support of California's attempt to extradite Olagues to California.

It was entirely on information and belief, but she claimed it was under the penalty of perjury. She claimed so since a particular California Family Code section 1331 requires a written document under penalty of perjury.

Stafford accepted false allegations from Jensen without investigating the truth of Jensen's assertions. That document was used to support a request for an ex-parte order to seize the children from Olagues. Stafford violated California Penal Code section 632 when she assisted Jensen in illegally recording the July 21 conversation between John Olagues and Jensen and used the illegally obtained evidence in court proceedings in violation of 632 d). Stafford then traveled to Louisiana to, in fact, seize the children from Olagues's custody.

Assistant district attorney Leon Kousharian, filed court papers in support of the interim custody order and represented the interests of Charlotte Jensen in violation of California Family code sections 3400 et seq. He did so knowing that his procedures were in violation of clear standards and inconsistent with the California Family Code sections 3400 et sequitor and sections 3100 et sequitor. He knowingly made false statements in a criminal complaint which was supposed to be under the penalty of perjury.

Sergeant Christopher Pool of the Belvedere, California police department assisted Charlotte Jensen in her deception of Stafford, Kousharian, David Wolff and the court and was a willing participant in the denial of due process in California and Louisiana. Pool traveled to Louisiana and helped Stafford in the illegal seizure of the children from Olagues's custody.

Charlotte Jensen and her attorney Peggy Bennington participated in this denial of due process as an active agent of the above participants under the color of law. She made factually false statements and erroneous legal statements in filings in Marin Superior Court. She participated with Leon Kousharian in denying me a hearing to determine who had custody rights over Caroline and Christine, even in the face of Judge Smith stating that he would not determine who had custody.

All of the actions of the above defendants are in violation of clearly established statutory and constitutional rights of the plaintiffs, which a reasonable person would have known. The constitutional rights that were violated are the plaintiffs' right to due process of law prior to the removal and separation of a child from his parent. This requirement is made clear in Stanley v. Illinois 405 US 645, 651; in Milliken v. Meyer 311 US 457; in Armstrong v. Manzo 380 US 545; in Batten v. Gomez Forth Circuit Federal Appeals ; Lassiter v Drpt. Of Soc. Serv. 452 US 18, 27. And Morrell v. Mock 270 F.3d 1090, 1097-1100

Their actions illustrate that they are either "plainly incompetent" or they "knowingly violated the law".

---

THE SECOND CAUSE OF ACTION is for an injunction to restrain Leon Kousharian, Patricia Stafford, Otis Bruce, Christopher Pool, Charlotte Jensen, Peggy Bennington and David Wolff from using information derived from the recorded conversation of July 21, 2003. The recording of that confidential conversation and the use of such information derived from that conversation violates California Penal Code Section 632 and 632 d). All of the above defendants have used the information derived from the July 21, 2003 confidential conversation in legal proceedings. California Penal code section 637.2 provides for the filing of a petition to enjoin the use of information gathered in violation of section 632.

---

The THIRD CAUSE OF ACTION is to enjoin the above mentioned defendants from continuing to violate the Constitutional and civil rights of plaintiff's, through extradition attempts, criminal complaints made, and arrest warrant maintained all in violation of due process without jurisdiction and with no probability of a successful prosecution.

A custody order is an essential element of a violation of Section 278.5a), without which there can be no prosecution. (See People v. Howard 36 Cal.3d 852,859.)

California to have subject matter jurisdiction over the alleged crime, must prove that there was sufficient preparatory acts done in California with the intent to complete the crime. California can not prove such preparation or intent and has no jurisdiction and does not even allege jurisdiction.

California refuses to withdraw the extradition request even in the face of Judge Winhhorst's order of October 15, 2003 to do so.

---

The FOURTH CAUSE OF ACTION is a request for Declaratory Judgement that a variation of a "ne exeat" order derived from a Hague Convention petition under Article 21 of that Convention is not a custody determination. The purpose of this request is that prosecutors in California and Louisiana have premised their actions against Olagues (both civil and criminal) on the basis that the Hague Convention proceeding is a "child custody proceeding". Olagues has notified California and Louisiana prosecutors of the fact that they have "no custody order" but only an "access order", which was allegedly violated. But they refuse to offer any rebuttal to that claim as they can not offer any rebuttal. If such declaratory judgement is granted to plaintiffs, both the civil and criminal proceedings must be terminated.

RELIEF REQUESTED

Defendants have denied Olagues right to be with his children for the past four months and have denied Caroline and Christine Olagues their right to be with their father for the same period. There is a possibility that a court in New Zealand will accept these present criminal and civil proceedings and Jensen's continued fraud as a basis to deny Olagues his rights to see his children. This is Jensen's plan and the California and Jefferson authorities are the executioners of her plan.

Plaintiffs seek actual monetary damages of $3,000,000 and punitive damages of $30,000,000 against defendants according to proof.

Plaintiffs seek to enjoin the further use of information by all defendants received from the July 21, 2003 recording.

Plaintiffs seek to enjoin the continued violation of due process of law and return the situation to the status quo prior to the seizure of the children.

Plaintiffs seek a declaratory judgement that the September 30, 2002 order is not a "child custody determination".

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED